MoExctNey, J.,
delivered the opinion of the court.
*101 We think there is no error in the decree in this cause. The material facts in the case are these: On the 25th of July, 1813,, Peterson, the complainant’s intestate, executed a deed of trust, conveying thereby, the slave, Susan, and other personal property, to Oole, as trustee. The objects of said deed, were, to secure the payment of a debt to Thomas Weir, of one hundred and seventy-five dollars and eighty three cents; to secure Robert Morrow, who was endorser for Peterson on a note for about three hundred and fifty dollars, held by the Branch of the Bank of Tennessee at Rogersville; and likewise to secure Calvin Peterson, as endorser on a note for three hundred dollars, to Eranklin Academy, in Campbell county.
Peterson, the maker of said deed, died on the 15th of Eebruary, 1844, intestate, and no administration on his estate was granted till December, 1844.
On the first of January, 1844, two judgments were recovered against said Peterson and others, as his endorsers, in the circuit court of Campbell. Upon these judgments, executions seem to have issued in the lifetime of Peterson, but they remained unexecuted until after his death, to wit: the 5th of March, 1844, on which day the Sheriff proceeded to levy on the slave, Susan, and other personal property, for their satisfaction.
It appears that the defendant, Morrow, who was one of the beneficiaries in said deed of trust, repudiated the indemnity provided for him, and renounced all benefit under said deed. And on the-day of April, 1844, Cole, the trustee, proceeded to sell the property embraced in said deed, except the slave, Susan, the proceeds of which were sufficient for the satisfaction of the debt for which Calvin Peterson was liable, and the debt to Weir, except about the sum of thirty-eight dollars. This *102 balance, tbe defendant, Cary, and one John Queener, the intestate of defendants, Gary & Morrow, paid to "Weir, which fully discharged the debt secured to him by said deed of trust. IJpon this'being done, the trustee was induced to deliver the slave, Susan, over to the Sheriff, to be sold by him by virtue of the levy of the executions before mentioned. This was done by the procurement of Gary and Queener, (who were personally interested in the satisfaction of one of said judgments, and liable for the same,) and who, in order to induce the trustee to surrender said slave to the sheriff, executed a bond of indemnity to the trustee, and similar bond to the sheriff. Thereupon, the sheriff, by virtue’ of the executions, and seizure aforesaid, sold said slave, on the 20th of April, 1844, to the defendant in the original bill, William Sweat, for the sum of four hundred and twenty-seven dollars, which was applied in exoneration of Cary and Queener’s liabilities.
After the grant of administration to the complainant, Pichardson, finding that the estate was utterly insolvent, lie made a suggestion thereof, as required by law, and thereupon brought this bill to have the sale of said slave declared void, and to have the slave surrendered to be administered under the statutes for the administration of insolvent estates. And Sweat brought his cross-bill to have. the purchase money refunded, upon the ground of fraud in the sale, and other grounds, which it is not important to notice.
The chancellor granted the relief sought by the original and cross-bill. And the defendants, Gary and the administrators of Queener appealed to this court.
There is no sufficient ground, in our opinion, for impeaching the deed of trust executed by Peterson to *103 Cole, and we bold it to be a solid security for tbe debts provided for, except so far as respects tbe debt for wbicb Morrow was liable; be having renounced tbe benefit of tbe personal indemnity provided for bim in said deed.
Tbe case tben turns upon tbe effect of tbe surrender of tbe slave by tbe trustee to the sheriff, and tbe sale of tbe latter.
In tbe first place, tbe arrangement between Cary and Queener, and tbe trustee, for tbe satisfaction of tbe balance of tbe mortgage debt, with a view to tbe release of tbe slave from tbe lien of tbe deed of trust, and for tbe surrender of tbe slave to tbe sheriff, having been made after tbe death of Peterson, and before administration on bis estate, was wholly inoperative and void. Tbe trustee bad no authority to make any such adjustment, or surrender. ITis power and authority were defined and limited by tbe terms of tbe trust. If, by tbe execution of tbe power conferred upon bim by tbe deed, or in any other mode warranted by law, tbe debts provided for were satisfied, leaving tbe slave undisposed of, be bad no power, by any act of bis own, to divest himself of tbe legal title, or to surrender tbe possession of tbe slave to any one, other than tbe properly appointed personal representative of Peterson. Until tbe appointment of such representative, there was no person in being in whom tbe legal title to tbe slave could rest; no one entitled to demand or receive possession of said slave.. Tbe interposition of Cary and Queener was an officious and unwarranted interference, on their part, wbicb could have no other effect, in law, than to subject them to personal liability for such wrongful interference.
*104 In the next place, the execution sale was a mere nullity. It is certainly true, that the executions in this case, having been issued in the life time of Peterson, might have been levied, after his death, upon any property of a personal nature; at least, of which, at the time of his death, he was the legal owner. But here, the legal title to the slave had been divested out of Peterson, and vested in Cole, during the life of the former, by operation of the deed of trust; so that at no time, from the execution of said deed till the death of Peterson, had he any such interest in the slave, Susan, as could be reached by an execution at law. And even admitting, for the argument’s sake, that the payment by Cary and Queener to "Weil1, could have the effect to discharge the lien, and divest the title of the trustee, the admission can avail the defendants nothing; because, upon this hypothesis, the legal title would remain in abeycmoe until the grant of administration on the estate of Peterson, and could not be reached by execution.
Inasmuch, however, as the parties, who are all before the court, have treated the slave as discharged from the lien of the deed of trust, we will so regard it for the present. And in this view, the complainant is clearly entitled to have the slave delivered to him; and the purchaser is entitled to a decree against the defendant Cary, and the administrators of Queener, for the purchase money and interest; Sweat accounting to the estate of Peterson for the reasonable hire of said slave during the time he had her in possession.
And the defendants, Cary & Queener’s administrators, will be allowed the balance paid by them to Weir in satisfaction of bis debt, as against the administrator. And forasmuch as said sum formed a lien upon the slave, *105 Susan, they will be entitled to priority, to the full extent of such payment, over all other creditors, in the event the assets should prove insufficient for the payment of all the debts.
Decree affirmed.